UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| LAWRENCE JOHNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>MINNESOTA DEPARTMENT OF CORRECTIONS MINNESOTA CORRECTIONAL FACILITY STILLWATER, Stillwater Warden MICHELLE SMITH, Stillwater Warden JOHN KING, Stillwater Warden LYNN DINGLE, Stillwater Commissioner JOAN FABIAN, Stillwater Deputy Commissioner DENNIS BENSON, Stillwater Correctional Sergeants PAUL GORDER, STEVE RADA, and RON SWINDELL, OSI Officer TERRILL FLORCYK, MN DOC Grievance Coordinator MARGARET THOM, Stillwater Correctional Lieutenant LORETTA RYKES, and JOHN DOE 1-6,<br><br>        Defendants. | Civil No. 12-784 (PAM/JSM)<br><br>**REPORT AND RECOMMENDATION** |

       Plaintiff, a Minnesota state prison inmate, commenced this action by filing a complaint seeking relief for alleged violations of his federal constitutional rights. (Docket No. 1.) Plaintiff did not pay the $350 filing fee required for this action, (see 28 U.S.C. § 1914(a)), but instead applied for leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) By order dated March 30, 2012, (Docket No. 3), Plaintiff was advised that his IFP application would not be addressed, and his case would not go forward, until after he paid an initial partial filing fee of $58.00, as required by 28 U.S.C. § 1915(b)(1).

Plaintiff has now paid his initial partial filing fee, (Docket No. 4), so his complaint is presently ripe for initial screening pursuant to 28 U.S.C. § 1915A.  The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court will recommend that this action be summarily dismissed.

I.     **BACKGROUND**

Plaintiff's lawsuit stems from an incident that allegedly occurred on November 9, 2006, while he was incarcerated at the Minnesota Correctional Facility in Stillwater, Minnesota, ("MCF-Stillwater").  Plaintiff alleges that a fellow inmate named Zencius wanted to play a game with Plaintiff, but Plaintiff declined.  Another inmate warned Plaintiff that Zencius seemed to be upset with Plaintiff, so Plaintiff tried to avoid Zencius.  Later that evening, however, Zencius allegedly threw a cup of scalding coffee at Plaintiff, which caused serious burns to Plaintiff's face, shoulder and back.  Plaintiff tried to hide his burns, because he was afraid that if prison officials learned about the coffee-throwing incident, he might be disciplined, and it might jeopardize his chances for parole.  Eventually, however, prison officials did find out about the incident, and Plaintiff then received some medical treatment for his burns.[1]

Plaintiff alleges that "[t]he guard post overseeing the area of the assault was not 'manned'" when the assault occurred.  (Complaint, p. 10, ¶ 48a.)  It is further alleged that a correctional officer named Steve Rada had told other correctional officers that the guard post must be manned at all times.  (Id.)  After the assault, Rada allegedly criticized two

---

[1] Zencius was subsequently convicted of third degree felony assault, and sentenced to an additional 15 months in prison.  (Complaint, p. 12, ¶s 58-59.)

unidentified correctional officers who should have been manning the guard post at the time of the alleged assault, telling them that they were "spending time on computers rather than performing their duties." (Id., p. 10, ¶ 48b.)

Although Plaintiff has received considerable medical treatment for his burn injuries, he alleges that he still has problems with his left eye as a result of the assault by Zencius. Plaintiff alleges that his left eye "weeps and twitches uncontrollably at times," and he continues to have "blurry spells throughout the day." (Id., pp. 11-12, ¶s 56, 56a.) He also alleges that despite his continuing use of prescribed eye drops, his vision "is getting progressively worse." (Id., p. 12, ¶s 56a., 57a., and 57b.)

In 2008, Plaintiff initiated a prison grievance proceeding by filing a formal grievance pertaining to the assault by Zencius. In that grievance, Plaintiff claimed that he would not have been assaulted if the guard post in the area had been properly staffed when the assault occurred. (Id., p. 12, ¶ 62a.) He also claimed that his injuries would have been discovered sooner, and he would have received medical attention more quickly, if the guard post had been properly staffed. (Id., ¶ 62b.) Plaintiff later filed three additional grievances pertaining to the assault by Zencius, but he apparently did not obtain any relief for any of his grievances.

In the present case, Plaintiff is attempting to sue the Minnesota Department of Corrections, ("DOC"), and more than a dozen DOC employees. He broadly claims that Defendants violated his federal constitutional rights under the Eighth and Fourteenth Amendments. He is also seeking relief based on the state common law tort theories of negligence and intentional infliction of emotional distress. Plaintiff is asking for a judgment against Defendants, "jointly and severally," for compensatory and punitive damages.

## II. DISCUSSION

Because Plaintiff is a prisoner who is attempting to sue government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. To the extent that a prisoner's complaint fails to state a legally cognizable claim, it must be summarily dismissed. 28 U.S.C. § 1915A(b)(1).

To state an actionable claim for relief, a plaintiff must allege a set of specific historical facts, which, if proven true, would entitle the plaintiff to some appropriate redress against the named defendant(s) under some cognizable legal theory. A plaintiff's pleading "may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

A complaint fails to state a cause of action if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The facts supporting a plaintiff's claims must be clearly alleged. Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

To state an actionable civil rights claim under 42 U.S.C. § 1983, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts showing that the named defendants violated the complainant's federal constitutional rights while acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). To establish a defendant's liability in a civil rights action "requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990); <u>Speed v. Ramsey County</u>, 954 F.Supp. 1392, 1397 (D.Minn. 1997) (same). In other words, civil rights claimants must plead facts showing <u>each named defendant's personal involvement</u> in alleged constitutional wrongdoing. <u>Ellis v. Norris</u>, 179 F.3d 1078, 1079 (8th Cir. 1999). <u>See</u> <u>also</u> <u>Beck v. LaFleur</u>, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim").

Thus, in order to state an actionable civil rights claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that purportedly violated the plaintiff's federal constitutional rights. The "plaintiff must plead that each Government-official defendant, <u>through the official's own individual actions</u>, has violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676, (emphasis added).

### A. **Eighth Amendment Claim**

In this case, Plaintiff's primary claim is that the various named Defendants violated his constitutional rights under the Eighth Amendment by not taking adequate precautions to protect him from being assaulted by Zencius. Plaintiff apparently believes that if Defendants had taken proper precautionary measures, such as making sure the guard

posts were properly staffed, then the assault never would have occurred.

A prison official violates the Eighth Amendment "'if he is deliberately indifferent to the need to protect an inmate from a substantial risk of harm from other inmates.'" Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998), quoting Newman v. Holmes, 122 F.3d 650, 652 (8th Cir. 1997). The Eighth Circuit Court of Appeals has explained that –

> "[T]he eighth amendment's prohibition against cruel and unusual punishment requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners, Farmer v. Brennan, 511 U.S. 825, 832... (1994).... Of course, prison officials do not commit a constitutional violation every time one prisoner attacks another. See id. at 834...; Blades v. Schuetzle, 302 F.3d 801, 803-04 (8th Cir.2002). In order to establish an eighth amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.' Farmer, 511 U.S. at 828...."

Young v. Selk, 508 F.3d 868, 871-72 (8th Cir. 2007).

> "To prove deliberate indifference, an inmate must make a two-part showing: 'The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'' Irving v. Dormire, 519 F.3d 441, 446 (8th Cir.2008) (quoting Farmer, 511 U.S. at 834).... The deprivation is ''objectively, sufficiently serious,' [under the first requirement when] the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm.'' Young, 508 F.3d at 872 (quoting Farmer, 511 U.S. at 834...). 'An official is deliberately indifferent [under the second requirement] if he or she actually knows of the substantial risk and fails to respond reasonably to it.' Id. at 873 (citing Farmer, 511 U.S. at 844-45)."

Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010) (emphasis added).

Thus, in order to plead an actionable Eighth Amendment failure-to-protect claim, a prisoner must allege facts showing that (1) he was "'incarcerated under conditions imposing a substantial risk of serious harm,'" (Jensen v. Clarke, 94 F.3d 1191, 1197 (8th Cir. 1996), quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)), and (2) the defendants who are

being sued were actually aware of the risk of serious harm and deliberately ignored it. Jackson, 140 F.3d at 1151. In other words, the prisoner-plaintiff must plead (and eventually prove) that the named defendants were <u>actually aware</u> of some particular threat to the prisoner-plaintiff, and <u>deliberately</u> disregarded the danger. As explained by our Court of Appeals, "to be liable, the accused prison official must have remained deliberately indifferent to an <u>actually known</u> risk of harm to the prisoner." <u>Williams v. Nebraska State Penitentiary</u>, 57 F.3d 667, 669 (8th Cir. 1995) (emphasis added). <u>See</u> <u>also</u> <u>Spruce v. Sargent</u>, 149 F.3d 783, 785 (8th Cir. 1998) ("[d]eliberate indifference requires a showing that the official knew the risk existed, but disregarded it").

Here, Plaintiff has failed to plead sufficient facts to state an actionable "failure to protect" claim against any of the named Defendants. Even if Plaintiff's factual allegations satisfy the "objective" requirement for such a claim, (i.e., that Plaintiff was exposed to a substantial risk of serious harm), the Eighth Amendment claim clearly fails, because there are no factual allegations to support the "subjective" requirement. Plaintiff has not pleaded any facts showing that any of the Defendants actually knew about the risk of harm to Plaintiff, and failed to respond in a reasonable manner. Nothing in Plaintiff's complaint suggests that any Defendant had any knowledge that Zencius posed a threat to Plaintiff's safety.

The true gist of Plaintiff's complaint is that Defendants were careless – i.e., they <u>should have known</u> that prison inmates are likely to hurt each other if they are not properly supervised, and they should have done more to protect the inmates at MCF-STW. In particular, Plaintiff contends, Defendants should have made sure that the guard posts at MCF-STW were properly staffed.

Plaintiff's allegations show only that Defendants were simply negligent, at worst. It is well settled, however, that "[n]egligence on the part of the prison official is insufficient to satisfy the subjective component [of a failure to protect claim]; the official must recklessly disregard a <u>known</u>, excessive risk of serious harm to the inmate." Norman v. Schuetzle, 585 F.3d 1097, 1104 (8th Cir. 2009) (emphasis added).

Again, Plaintiff has not alleged any facts suggesting that any named Defendant had any foreknowledge that Zencius posed a threat to Plaintiff's safety. There are no facts showing that any Defendant had a culpable state of mind. Therefore, Plaintiff has failed to plead an actionable Eighth Amendment failure-to-protect claim.

### B. Fourteenth Amendment Claims

Plaintiff also claims that Defendants violated his constitutional rights under the Fourteenth Amendment – specifically, his right to due process and equal protection. However, Plaintiff has failed to plead a set of facts that could support any such claim.

To state an actionable § 1983 due process claim, a complainant must allege a set of facts showing that he was deprived of a constitutionally protected interest in life, liberty or property, without being afforded adequate procedural protections. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"); Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) ("'[i]n order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action'") (quoting Phillips v. Norris, 320 F.3d 844, 846 (8th Cir.2003)).

Much of Plaintiff's complaint describes the administrative grievance proceedings that followed the assault by Zencius. Plaintiff seems to believe that his constitutional right to

due process was somehow violated during the course of those proceedings. However, the complaint does not present any facts showing that Plaintiff was deprived of any constitutionally protected interest during the course of those proceedings. Moreover, it appears that those proceedings actually provided Plaintiff due process for any claimed deprivation of any constitutionally protected interest. In any event, Plaintiff's complaint does not describe any specific act or omission by any named Defendant that could support a due process claim against that Defendant.[2]

Likewise, Plaintiff's complaint does not describe anything that any Defendant did, or failed to do, that could support an equal protection claim. To maintain an equal protection claim, a plaintiff must show that he belongs to a group that has been treated less favorably than others who are "similarly situated." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995). In this case, there are no allegations suggesting that Plaintiff belongs to any special class of inmates, or that Defendants treated Plaintiff differently from other similarly-situated inmates. Therefore, Plaintiff has not pleaded an actionable equal protection claim. See Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (equal protection claims are properly dismissed when the plaintiff has not "allege[d] any facts to show that he was treated differently from other inmates because he belonged to a protected class").

---

[2] The Court has considered whether Plaintiff might have been intending to claim that Defendants violated his right to substantive due process, even though that term does not appear in the complaint. However, "state officials are liable, on a theory of substantive due process, only if their actions are so egregious or outrageous as to 'shock the contemporary conscience.'" Dodd v. Jones, 623 F.3d 563, 567 (8th Cir. 2010), quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998). Plaintiff's complaint does not describe any specific acts or omissions by any Defendant that could "shock the contemporary conscious."

### C.  "Monell Claim"

Plaintiff's complaint also refers to a "Monell claim," which presumably means a claim based on the principles discussed in Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978).  A Monell claim is a § 1983 claim brought against a governmental entity or agency that has adopted some policy, custom or practice that allegedly caused a violation of the claimant's constitutional rights.  See Davison v. City of Minneapolis, Minn., 490 F.3d 648, 659 (8th Cir. 2007) (a city "may be held liable under section 1983... if one of its customs or policies caused the violation of" the plaintiff's constitutional rights") (citing Monell).

In this case, Plaintiff has described his Monell claim as follows:

> "Defendants, implicitly or explicitly, through deliberate indifference and/or tacit authorization and with notice, did allow the continued and widespread existence of unconstitutional policies, customs, or practices that resulted in, inter alia, a breakdown of communication, process, supervision, training, maintenance, ethics and/or hiring that were the 'moving force' behind, or the proximate cause of, the deprivation of Plaintiff's constitutional rights as guaranteed by the Eighth and Fourteenth Amendments...."

(Complaint, p. 17, ¶ 86.)

This conclusory allegation does not state an actionable Monell claim, because it does not describe any specific policy, custom or practice that allegedly caused a violation of Plaintiff's constitutional rights.  Moreover, there are no other factual allegations in Plaintiff's complaint showing that a particular Defendant adopted a clearly identified policy, custom or practice that caused Plaintiff's injuries.  Indeed, the complaint does not provide any description of any policy, custom or practice at all.  Plaintiff's vague and conclusory allegation that his injuries were some caused by some unidentified "unconstitutional policies, customs or practices" is not sufficient to state a Monell claim.  Iqbal, 556 U.S. at

678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). See also Spiller v. City of Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997) (to plead an actionable Monell claim "[t]he description of a policy or custom and its relationship to the underlying constitutional violation... cannot be conclusory; it must contain specific facts").  Because there are no factual allegations describing any specific policy, custom or practice that was established by any particular Defendant(s), Plaintiff has failed to plead an actionable Monell claim.[3]

### D.    Common Law Tort Claims

Plaintiff is also attempting to sue Defendants based on the common law tort theories of negligence and intentional causing of emotional distress.  He apparently wants the federal court to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

However, under § 1367(c)(3), federal courts may decline to exercise supplemental jurisdiction over state law claims when the court has "dismissed all claims over which it has original jurisdiction."  This clause of the supplemental jurisdiction statute is directly applicable here, as it has already been determined that all of Plaintiff's attempted federal claims, (i.e., his § 1983 claims under the Eighth and Fourteenth Amendments), must be dismissed.  "[W]hen federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims."  Stokes v. Lokken, 644 F.2d 779, 785 (8th Cir. 1981);

---

[3] To the extent that Plaintiff is attempting to bring a Monell claim, (or any other claim), against the DOC, his claim is barred by the Eleventh Amendment. See Glick v. Henderson, 855 F.2d 536, 540 (8th Cir. 1988) (states and their agencies are immune from suit in federal court under the Eleventh Amendment).

see also, Save Our Health Organization v. Recomp of Minnesota, 829 F.Supp. 288, 293 (D.Minn. 1993), aff'd, 37 F.3d 1334 (8th Cir. 1994).

The instant case has not progressed beyond the filing of the complaint, so the interests of "judicial efficiency, convenience, and fairness to the litigants" will not be compromised by the federal court's refusal to entertain Plaintiff's state law claims. Condor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990). Furthermore, the federal court would not be the most suitable forum for adjudicating Plaintiff's state law claims. See id. at 220 (stressing "the need to exercise judicial restraint and avoid state law issues wherever possible"). Therefore, it would not be appropriate to exercise supplemental jurisdiction over Plaintiff's current state law claims against the various named Defendants. Those claims should be dismissed without prejudice, leaving Plaintiff free to pursue them in the state courts, if he chooses. See Stokes v. Lokken, 644 F.2d at 785.[4]

### III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's complaint fails to state any actionable claim for relief under 42 U.S.C. § 1983. It is therefore recommended that all of Plaintiff's attempted § 1983 claims be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Court further recommends that supplemental jurisdiction should not be exercised over any of Plaintiff's state law claims against Defendants. Thus, the Court recommends that this entire lawsuit should be summarily dismissed, without prejudice to Plaintiff's right to renew his state law claims in state court.

---

[4] Needless to say, this Court offers no opinion about the sustainability of any state tort law claim that Plaintiff might attempt to bring against Defendants, and Plaintiff should not interpret this ruling as an encouragement to pursue a separate lawsuit against Defendants state court.

Having determined that this action should be summarily dismissed, the Court will also recommend that Plaintiff's application to proceed in forma pauperis be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff will remain liable for the unpaid balance of the $350 filing fee.[5] To date, Plaintiff has paid only $58.00, so he still owes $292.00. Prison officials will have to deduct that amount from Plaintiff's institutional trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).

## IV.  RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1.  Plaintiff's application to proceed in forma pauperis, (Docket No. 2), should be **DENIED**;

2.  All of the claims that Plaintiff is attempting to bring under 42 U.S.C. § 1983 should be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3.  The District Court should decline to exercise supplemental jurisdiction over Plaintiff's claims against Defendants that are based on state common law tort theories, and

---

[5] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners can file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

those claims should be **SUMMARILY DISMISSED WITHOUT PREJUDICE**; and

    4.    Plaintiff should be required to pay the unpaid balance of the Court filing fee, namely $292.00, in accordance with 28 U.S.C. § 1915(b)(2).

Dated:    May 15, 2012

    *s/ Janie S. Mayeron*
    JANIE S. MAYERON
    United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 30, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.